# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

JAMES A. HOLMQUIST and SCOTT A. WHITE,

    Plaintiffs,

vs.

EXOTIC CARS AT CAESARS PALACE, LLC., et al.,

    Defendants

Case No. 2:07-cv-00298-RLH-GWF

**FINDINGS & RECOMMENDATIONS**

**Plaintiffs' Motion to Strike Answer of Defendant Weisman - #97**

This matter is before the Court on Plaintiffs' Motion to Strike Answer of Defendant Weisman for Failure to Obey the Court's May 1, 2008 Order Compelling Discovery (#97), filed on June 24, 2008; Defendant's Opposition to Plaintiffs' Motion to Strike Answer of Defendant Weisman for Failure to Obey the Court's May 1, 2008 Discovery Order (#101), filed July 14, 2008; and Plaintiffs' Reply in Support of Motion to Strike Answer of Defendant Weisman for Failure to Obey the Court's May 1, 2008 Order Compelling Discovery (#103), filed on July 28, 2008. The Court conducted a hearing in this matter on August 8, 2008.

## BACKGROUND

Plaintiffs James A. Holmquist and Scott A. White filed this action against Defendants Exotic Cars at Caesars Palace, LLC ("ECACP") and Richard Weisman on March 8, 2008. *Complaint (#1)*. Plaintiffs allege that Defendant Weisman made false and fraudulent representations and omissions to Plaintiffs which induced them to each invest $125,000 in ECACP in exchange for a 2 percent ownership interest, respectively, in the company. The alleged misrepresentations and omissions included: (1) falsely representing that ECACP would be receiving required Nevada dealership licenses within a few weeks to sell exotic luxury cars; (2) failing to disclose that several of the cars in ECACP's

1  inventory were the subject of a restraining order issued by the United States District Court in New York
2  to McCormick Holdings, LLC which permitted the seizure of vehicles that ECACP would be offering
3  for sale in Nevada; (3) failing to disclose that five of the vehicles were returned to the plaintiff in the
4  New York action on May 28, 2005 which depleted ECACP's vehicle inventory by 25 percent; (4)
5  failing to inform Plaintiffs that ECACP was delinquent in its rent payments to Caesars Palace to a
6  greater degree than he had told them; and (5) failing to disclose that the plaintiff in the New York action
7  had informed Caesars Palace that it intended to oppose Defendants' application for a local license,
8  intended to seize vehicles in Defendants' possession and to force Defendant Weisman into bankruptcy.
9  Plaintiffs further allege that after they made their investments, Defendant failed to provide financial and
10 other information requested by Plaintiffs.

11       Plaintiffs allege that after ECACP received temporary licenses and began selling cars, it did not
12 distribute profits to Plaintiffs as promised.  Plaintiffs also allege that Defendant Weisman did not
13 disclose cash distributions that he or others received from ECACP.  Plaintiffs also allege that Defendant
14 Weisman induced them to sign documents stating that their equity investments were loans in order for
15 ECACP to obtain licenses.[1]  Finally, Plaintiffs allege that Defendants did not fulfill the promises made
16 to Plaintiffs that they could purchase vehicles from ECACP at wholesale.

17       On October 12, 2007, Plaintiffs filed a Motion to Compel Discovery (##29, 30 and 31).
18 Plaintiffs stated that they served interrogatories and requests for production of documents on
19 Defendants on July 24, 2007.  The time for Defendants to respond to the discovery requests was
20 extended while the parties pursued a settlement conference before another magistrate judge with the
21 understanding that Defendants would provide discovery responses by September 7, 2007 if the case did
22 not settle.  The August 30, 2007 settlement conference was adjourned with the understanding that

---

[1] It is undisputed that the parties executed a subscription agreement.  Defendants stated in their answer, however, that Plaintiffs understood that they would not be owners of ECACP until the company received all necessary licenses and that, until that time, Plaintiffs would be considered lenders. *Answer to Complaint (#),* ¶ 18.  Plaintiffs contend that Defendants' allegation that they were lenders is false. *See Reply Memorandum in Support of Motion to Compel (#36),* p. 2.  Copies of the subscription agreements or the documents signed by Plaintiffs stating that their equity investments were loans have not been provided to the Court.

1  Defendants would respond to Plaintiffs' discovery requests before a resumed settlement conference on
2  October 15, 2007.  Plaintiffs stated that Defendants did not provide written discovery responses prior to
3  the rescheduled settlement conference, although Defendants did provide 788 pages of documents that
4  were responsive to some of the requests.  In their Response to Plaintiffs' Motion to Compel (#35),
5  Defendants stated that they had produced approximately 800 pages of responsive documents to
6  Plaintiffs, and that following the filing of Plaintiffs' motion to compel, they had provided written
7  responses to the Plaintiffs' interrogatories and requests for production of documents.
8        In their Reply (#36), Plaintiffs argued that Defendants had only produced some of the
9  documents requested in discovery, had only partially responded to some of Plaintiffs' interrogatories
10  and had asserted improper boiler plate objections.  Plaintiffs further stated:

> The limited financial documents produced by Defendants establish that Weisman has personally withdrawn large sums of cash and non pro-rata distributions from the company while claiming the company is essentially strapped for cash and unable to pay its bills in the ordinary course.  For the period January 1, 2006 through September 2007, the limited records produced show that Weisman took over $600,000 out of the company.  This does not even account for 2005 – the year Plaintiffs invested.
>
> Since the company deals in used and consigned vehicles which can be sold without accounting for them, Plaintiffs have asked for the underlying financial records to determine where the millions of dollars received in revenue have gone and to be able to trace the cash from the sales of vehicles.  Given that Weisman has been withdrawing cash from the company, there is no reason to believe the general ledger of the company, financial statements and tax returns show an accurate financial picture of the company.  It is therefore necessary for a thorough forensic examination of the records of the company to flesh out the facts in this case.

21  *Reply (#36)*, pp. 2-3.
22        Plaintiffs set forth in their Reply the interrogatories and requests for production to which
23  Defendants had failed to fully respond.  *Id.* pp. 5-9.
24        On December 6, 2007, Plaintiffs withdrew their motion to compel due to a conditional
25  settlement of the litigation.  *See Withdrawal of Motion to Compel (#44)*.  On March 4, 2008, however,
26  Plaintiffs notified the Court that the conditional settlement had failed and requested that the Court
27  schedule a status conference.  *See Notice of Failed Settlement and Request for Status Hearing (#47)*.
28  On March 14, 2008, Defendants filed a Notice of Pending Bankruptcy and Stay (#50) on behalf of

1  Defendant ECACP under Chapter 11 of the United States Bankruptcy Code. At the status hearing on
2  March 18, 2008, the Court was advised that the case would proceed forward against Defendant
3  Weisman, only, and the Court reopened discovery for a period of 90 days. *Minutes of Proceedings*
4  *(#52).*
5      On April 3, 2008, Plaintiffs filed a motion to renew their motion to compel discovery as to
6  Defendant Weisman which the Court set for hearing on April 17, 2008. Prior to that hearing,
7  Defendant Weisman's attorneys moved to withdraw. Attorney Afshin Tadayon appeared at the April
8  17th hearing and advised the Court that he had been retained by Defendant Weisman, but had not yet
9  filed his notice of appearance as counsel. Defendant Weisman's counsel Jonathan M. Harris, whose
10 motion to withdraw was then pending, also appeared telephonically at the hearing. During the hearing,
11 both parties' counsel agreed that Plaintiffs' claims against Defendant Weisman and ECACP are
12 intertwined. Plaintiffs' counsel reiterated their argument that the partial records produced by
13 Defendants did not provide adequate information regarding the income and expenses of the Defendants
14 or allow them to determine specifically what funds had been distributed to Defendant Weisman.
15 Plaintiffs' counsel indicated that their primary goal was to obtain production of ECACP's/Weisman's
16 business records so that Plaintiffs could conduct a forensic examination of the records.
17     Defendant Weisman's counsel, Mr. Harris, represented that Defendant Weisman was willing to
18 permit Plaintiffs' counsel to inspect ECACP's and Weisman's records and that prior efforts to arrange
19 such an inspection had not been successful due to counsels' and Defendant Weisman's schedules.
20 At the time of the April 17, 2008 hearing, ECACP was the debtor-in-possession in the Chapter 11
21 bankruptcy case and ECACP and Defendant Weisman were still in possession, custody or control of
22 ECACP's records. Plaintiffs' counsel, Mr. Perry, stated that he was willing to remain in Las Vegas,
23 Nevada on April 17-18, 2008 for purposes of inspecting and examining the records. The Court
24 therefore ordered that ECACP's and Defendant Weisman's business records be made available for
25 inspection by Plaintiffs' counsel on April 17-18 2008, if possible. The Court also directed the parties to
26 meet and confer in an effort to resolve the dispute regarding Plaintiffs' demand that Defendant
27 Weisman supplement his answers to interrogatories. The Court scheduled a further status hearing
28 regarding discovery and the motion to compel for May 1, 2008. *See Minutes of Proceedings (#60).*

On April 24, 2008, Plaintiffs' counsel filed a Status Report (#61) which stated that Plaintiffs' counsel had several conversations with Defendant Weisman's new counsel, Mr. Tadayon, on April 17 and 18 regarding inspection of the documents. Although Mr. Weisman and Mr. Tadayon initially indicated that the inspection would be permitted, Mr. Tadayon subsequently advised Plaintiffs' counsel that the inspection would not be permitted, that Defendant Weisman would no longer respond to discovery or defend the case, and that Plaintiffs were free to enter a judgment against Defendant Weisman. Plaintiffs' Status Report (#61) was served on Defendant Weisman's counsel of record and Mr. Tadayon, who had not yet entered his appearance as Defendant Weisman's counsel.

Although not filed with Plaintiffs' April 24th Status Report, Plaintiffs have attached to their instant Motion to Strike Answer (#97) copies of emails that were exchanged between Plaintiffs' counsel and Mr. Tadayon and Defendant's other counsel on April 22 and 25, 2008.[2] In his April 22nd email, Plaintiffs' counsel stated in pertinent part:

> This will confirm that Mr. Tadayon advised me last Thursday evening and Friday morning that Mr. Weisman refused to honor the magistrate judge's order to allow me to examine the documents at the Exotic Cars facility. . . . Mr. Tadayon also said Mr. Weisman is willing to allow us to enter a judgment against him as he no longer wishes to defend the suit.
>
> Please file a pleading withdrawing the answer so I may proceed and take a default judgment. If you have not done so by this Friday, I will seek appropriate relief.
>
> Even though we are currently having a settlement dialogue, we must resolve the judgment issue in the interim as I will not allow settlement negotiations to delay the entry of a judgment.

Mr. Tadayon responded to Mr. Perry's email as follows:

> Please do not misquote me. I never said that Mr. "Weisman refused to honor the magistrate judge's order to allow" you "to examine the documents at the Exotic Cars facility." What I did say was that Mr. Weisman has decided to give up the fight and is willing to accept a judgment against him in regards to this matter and therefore it would be a waste of financial resources for all to be investigating documents when my client is willing to surrender.

*Declaration of Shawn M. Perry (#99), Exhibit "2."*

---

[2] These emails, with settlement discussions redacted, were also attached to Defendant's Opposition to Plaintiff's Motion for Summary Judgment (#83), Exhibits "B", "C" and "D."

1    The April 22-25, 2008 emails indicated that the parties were engaged in settlement discussions
2 apparently involving the terms of a judgment that would be entered against Defendant Weisman. In his
3 April 25, 2008 email, Mr. Tadayon apparently made a settlement offer which was not thereafter
4 responded to by Plaintiffs.
5    On April 24, 2008, the Court entered orders granting the motions to withdraw by Defendant
6 Weisman's attorneys of record. *See Orders (## 63, 64)*. Defendant Weisman and/or Mr. Tadayon did
7 not file a written response to Plaintiffs' April 24, 2008 Status Report and did not appear at the status
8 hearing on May 1, 2008. Based on the briefs submitted in regard to Plaintiffs' Motion to Compel (#29)
9 and Plaintiffs' counsel's representations in the April 24, 2008 status report and at the May 1, 2008
10 hearing, the Court granted Plaintiffs' Motion to Compel (#29). *See Order (#70)*.
11    On May 19, 2008, Plaintiffs filed a motion for summary judgment which was based in
12 substantial part on Mr. Tadayon's representations that Defendant Weisman did not intend to further
13 respond to discovery or defend the case and would permit Plaintiffs to obtain a judgment against him.
14 *See Motion for Summary Judgment and Memorandum in Support Thereof  (##71, 72)*. Mr. Tadayon
15 thereafter filed his notice of appearance as Defendant Weisman's counsel on May 23, 2008 and filed an
16 opposition to Plaintiffs' motion for summary judgment. *Notice of Appearance (#82)* and *Opposition to
17 Motion for Summary Judgment (#83)*. Defendant stated in his opposition that following Mr. Tadayon's
18 April 25th email, Plaintiffs' counsel "made no contact with Tadayon until May 20, 2008." *Opposition
19 (#83)*, p. 6.
20    On June 13, 2008, the District Judge denied Plaintiffs' motion for summary judgment because
21 Plaintiffs had not met their burden of showing that there are no genuine issues of material fact. *See
22 Order (#96 )*. The Court stated, however, that the motion was denied "without prejudice for Plaintiffs
23 to pursue sanctions against Defendant for his failure to cooperate in discovery." *Id.,* p. 2. The Court
24 also noted that "Defendant's Opposition is essentially non-existent and but for Plaintiffs' failure to meet
25 its initial burden, the Court would not dismiss this Motion." *Id.*, p. 3.
26    After the Court denied Plaintiffs' motion for summary judgment on June 13, 2008 and Plaintiffs
27 filed the instant motion on June 24, 2008, Defendant Weisman did not further respond to Plaintiffs'
28 discovery requests or comply with the discovery order. Defendant Weisman states that ECACP's

records are now in the possession of the bankruptcy trustee and Defendant no longer has possession, control or custody of those records to make them available for inspection by Plaintiffs. According to Plaintiffs, however, ECACP's Chapter 11 bankruptcy was converted to a Chapter 7 case on June 19, 2008 and prior to that date Defendant Weisman had actual possession, custody and control of the records and could have made them available for inspection and copying by the Plaintiffs as the Court previously ordered. Plaintiffs also state that Defendant Weisman has not produced any financial records in his own possession, custody and control. Nor has he provided supplemental answers to interrogatories as directed by the Court's May 1, 2008 order.

## **DISCUSSION**

Fed.R.Civ.Pro. 37(b)(2) provides that if a party fails to obey an order to provide or permit discovery, the court may make such orders in regard to the failure as are just, which may include, "(C) an order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party." In regard to imposing the severe sanctions of dismissal or striking a defendant's answer and entering its default, *Henry v. Gill Industries,* 983 F.2d 943, 948 (9th Cir. 1993), states:

> Because the sanction of dismissal is such a harsh penalty, the district court must weigh five factors before imposing dismissal: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Porter v. Martinez*, 941 F.2d 732,733 (9th Cir. 1991) (citations and internal punctuation omitted).

The key factors are prejudice and the availability of lesser sanctions. *Henry,* 983 F.2d at 948, *citing Wanderer v. Johnson*, 910 F.2d 652, 656 (9th Cir. 1990). For dismissal to be proper, the conduct to be sanctioned must also be due to willfulness, fault or bad faith by the losing party. *Henry*, 983 F.2d at 947-48, *citing Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1337 (9th Cir. 1985). *See also Valley Engineers Inc. v. Electric Engineering Company*, 158 F.3d 1051 (9th Cir. 1998); *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995); and *Leon v. IDX Systems Corp.*, 464 F.2d 951 (9th Cir. 2006). In deciding whether dismissal or default is warranted, the court may consider all of the offending party's discovery conduct. *Henry*, 983 F.2d at 947, *citing*

*Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1411 (9th Cir. 1990).

In *Henry*, the plaintiff failed to provide relevant documents in response to requests for production of documents and repeatedly delayed the taking of his deposition by cancelling it at the last minute. Plaintiff argued that defendant was not prejudiced because it eventually obtained all discovery it was seeking, including his deposition. The court stated, however, that a defendant suffers prejudice if plaintiff's actions impair defendant's ability to go to trial or threaten the rightful decision of the case. It also noted that as a result of plaintiff's wrongful delaying actions, a key witness for defendant became unavailable to participate in the defense. The court also found that lesser sanctions had been tried to obtain plaintiff's compliance and had failed. Therefore, the availability of lesser sanctions was not a factor weighing against imposition of the severe sanction of dismissal. *Henry* also rejected plaintiff's assertion that his conduct was not willful or in bad faith. The court stated that "'disobedient conduct not shown to be outside the control of the litigant' is all that is required to demonstrate willfulness, bad faith or fault." *Henry,* 983 F.2d at 948, *citing Fjelstad,* 762 F.2d at 1341. Plaintiff's failure to produce documents, his disregard for discovery orders and his repeated failure to appear for his deposition justified the district court's conclusion that his conduct was willful, in bad faith or at fault and justified the imposition of the severe sanction of dismissal. *Id.,* at 949.

In *Anheuser-Busch, Inc. v. Natural Beverage Distributors, Inc.*, 69 F.3d 337, 348 (9th Cir. 1995), the court affirmed the district court's order dismissing the counterclaim where the counter-claimant falsely responded to plaintiff's discovery requests and court orders to produce relevant financial records by claiming that they were destroyed in a fire. In holding that counter-claimant's conduct was willful, in bad faith or at fault, the court stated:

> It is well settled that dismissal is warranted where, as here, a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings: "courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Wyle,* 709 F.2d at 589 (upholding dismissal of complaint pursuant to the court's inherent power where plaintiff's denials of material fact were knowingly false and plaintiff willfully failed to comply with discovery orders); (additional citations omitted).

The court also held that Anheuser was prejudiced by defendant's failure to produce the documents because it was forced to rely on incomplete and spotty evidence in presenting its financial

analysis of the income that counter-claimant derived from its distributorship. *Anheuser-Busch, Inc.,* 69 F.3d at 353-354. *Anheuser-Busch, Inc.* further states that due process requires that there exist a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression threatens to interfere with the rightful determination of the case. The court found that because the counter-claimant's misconduct consisted of falsely denying the existence of and suppressing information that was clearly relevant to Anheuser's defense on the counterclaim, its misconduct prejudiced Anheuser's ability to present its case. *Id.,* at 348, 355. The court also rejected defendant's argument that plaintiff was not prejudiced because the documents were produced two months before the scheduled commencement of trial. The court stated:

> Additionally, tendering documents after the first trial and one or two months before the second trial was to begin cannot cure the prejudice to Anheuser. This court has squarely rejected the notion that a failure to comply with the rules of discovery is purged by belated compliance. *Henry*, 983 F.2d at 947; *see also North Am. Watch Corp.,* 786 F.2d at 1451 (holding "[l]ast minute tender of documents does not cure the prejudice to opponents nor does it restore to other litigants on a crowded docket the opportunity to use the courts."); *G-K Properties v. Redevelopment Agency of San Jose*, 577 F.2d 645, 647-48 (9th Cir. 1978) (holding "last minute tender" of relevant documents does not cure effects of discovery misconduct). 69 F.3d at 354.

In *Valley Engineers Inc. v. Electric Engineering Company*, 158 F.3d 1051, 1057 (9th Cir. 1998), the court stated that it is not always necessary for the court to impose less severe sanctions first, or to give any explicit warning of the dismissal sanction in order for the sanction of dismissal to be proper. The court stated:

> Like most elaborate multifactor tests, our test has not been what it appears to be, a mechanical means of determining what discovery sanction is just. The list of factors amounts to a way for a district judge to think about what to do, not a series of conditions precedent before the judge can do anything, and not a script for making what the district judge does appeal proof. . . .
>
> The significance of warning is that a sanction may be unfair if the party could not have realized that it was in jeopardy of so severe a consequence if it was in error regarding its discovery posture. Rule 37 tells all lawyers and their clients that dismissal is possible if they violate discovery orders, and direct warnings or other circumstances may make it clear that it is a real risk of continued violation in the particular case.

. . .

. . .

9

1   The court further stated:

> What is most critical for case-dispositive sanctions, regarding risk of prejudice and of less drastic sanctions, is whether the discovery violations "threaten to interfere with the rightful decision of the case." *Adriana*, 913 F.2d at 1412. While contumaciousness toward the court needs a remedy, something other than case-dispositive sanctions will often suffice. Dismissal is appropriate where a "pattern of deception and discovery abuse made it impossible" for the district court to conduct a trial "with any reasonable assurance that the truth would be available." *Id.,* at 1057-58, *citing Anheuser-Busch, Inc.,* 69 F.3d at 352.

*Valley Engineers Inc.*, 158 F.3d at 1057-58.

Plaintiffs have made a credible case that the partial records produced by Defendants ECACP and Weisman do not provide adequate information regarding the income and expenses that ECACP received and incurred from the sale of exotic vehicles or adequate information regarding the funds that Defendant Weisman received from ECACP in alleged violation of his duties to the company's investors or creditors. Defendants did not seriously contest these allegations at the motion to compel hearing on April 17, 2008. As set forth above, Defendant Weisman's former counsel represented at the April 17th hearing that Defendant Weisman had previously been willing to permit Plaintiffs' counsel to inspect and copy Defendants' records and that Defendant Weisman wished to resolve the discovery dispute by producing relevant records. On April 17, 2008, ECACP and Defendant Weisman were still in the possession, custody and control of ECACP's records. Based on this information the Court ordered that Defendant Weisman produce the records for inspection by Plaintiffs' counsel at ECACP's facility on April 17-18, 2008.

Defendant Weisman's new counsel, Mr. Tadayon, initially agreed to make the records available for inspection. On April 17-18, however, Defendant Weisman changed his mind and declined to make the records available for inspection on the grounds that he would no longer defend the case and would permit a judgment to be entered against him. While it might be debated whether Defendant Weisman "refused to comply" with the Court's April 17th order, Mr. Tadayon's April 25, 2008 email confirms that Defendant declined to make the records available for inspection because he would no longer defend the case. It is also clear that Plaintiffs acted in reliance on Mr. Tadayon's statements. Instead of filing a motion for sanctions based on Defendant Weisman's failure to comply with the May 1, 2008 order (#70), Plaintiffs moved for summary judgment on May 19, 2008 based in substantial part on the

understanding that Defendant Weisman would not defend the action or oppose the entry of a judgment against him.

The April 22-25, 2008 emails between Plaintiffs' and Defendant's counsel indicate that there were settlement discussions or negotiations between the parties regarding the terms of a judgment to be entered against Defendant Weisman. Plaintiffs' counsel's April 22nd email also stated, however, that he "would not allow settlement negotiations to delay the entry of a judgment." *Declaration of Shawn M. Perry (#99), Exhibit "2."* Absent a formal stipulation or order withdrawing Defendant's answer or entering judgement against him, Defendant Weisman was not precluded from changing his mind about abandoning his defense if he could not reach an agreement with Plaintiffs regarding the terms of a judgment. If Defendant decided not to abandon his defense, however, he was obligated under the circumstances to inform the Plaintiffs of his changed position and to comply with the Court's discovery order. Defendant did not respond to Plaintiffs' April 24, 2008 Status Report or appear at the May 1, 2008 status hearing regarding the motion to compel. There is also no evidence that Defendant Weisman or Mr. Tadayon informed Plaintiffs' counsel prior to May 23, 2008 when he filed his opposition to the motion for summary judgment, that Defendant would not abandon his defense and would resist the entry of a judgment against him. Likewise, Defendant Weisman made no attempt to comply with the discovery order either before or after he filed his opposition to the motion for summary judgment or after the Court denied Plaintiffs' motion for summary judgment on June 13, 2008.

Defendant states in his opposition that "Weisman was embroiled in settlement negotiations throughout the month of May" and that "[h]e had to devote his time and resources in May to responding to an unfounded Motion for Summary Judgment, which was based entirely on Plaintiffs' version of events and affidavits." *Opposition to Plaintiffs' Motion to Strike (#102)*, p. 4. The record does not support these assertions. First, Defendant stated in his opposition to Plaintiffs' motion for summary judgment that following his counsel's April 25, 2008 email, Plaintiffs' counsel made no contact with Defendant's counsel until May 20, 2008. *Opposition to Motion for Summary Judgement (#83)*, p. 6. Defendant and his counsel were obviously not "embroiled" in settlement negotiations between April 25 and May 20, 2008 if there were no communications between the parties.

. . .

Second, Plaintiffs' motion for summary judgment was not filed until May 19, 2008. That motion consisted primarily of Plaintiffs' assertions of the truth of the allegations made in their complaint and was based on their apparent expectation that Defendant would not oppose the motion. Defendant filed his opposition to the motion on May 23, 2008, i.e., only four days after it was filed. Defendant and his counsel, at most, devoted some time and resources between May 19 and 23 in responding to the motion for summary judgment. Defendant's argument that these circumstances prevented him from complying with the Court's May 1, 2008 discovery order are therefore without merit.

Defendant's other excuse for not complying with the May 1, 2008 discovery order is that ECACP's business records are now in the possession of the bankruptcy trustee or its attorney and that Mr. Weisman no longer has control over those records to make them available for inspection by Plaintiffs. Defendant argues that Plaintiffs should have subpoenaed the records from the trustee instead of pursuing their motion for sanctions. Plaintiffs stated in their Reply (#103), however, that ECACP's bankruptcy was not converted to a Chapter 7 case until June 19, 2008 and Defendant Weisman would have had possession, custody or control over the records up until that date. Defendant's counsel has not disputed this assertion. Nor did Defendant submit any affidavit in support of his opposition reasonably demonstrating that he was unable to produce the records for inspection between May 1, 2008 and June 19, 2008. Additionally, Defendant has not demonstrated that he does not possess other records regarding his own receipt of distributions from ECACP or that he was unable to supplement his answers to interrogatories as he was ordered to do by the May 1, 2008 discovery order. Finally, Defendant has made no showing that he was unable to make arrangements with the bankruptcy trustee or its counsel to have ECACP's records made available for inspection by Plaintiffs' counsel, which given the foregoing circumstances, he was reasonably obligated to do. The Court, therefore, concludes that Defendant's excuses for not complying with the Court's April 17, 2008 oral order and its May 1, 2008 written order are without merit and support the conclusion that his failure to comply with the order was willful, in bad faith, or at minimum due to his own fault.

Finally, Defendant argues that his failure to comply with the Court's discovery order does not rise to the level required by Ninth Circuit case law to justify the imposition of severe sanctions under

Rule 37(b)(2)(C) and that the Court should first impose lesser sanctions. The Court disagrees on both counts. As the Ninth Circuit states in *Valley Engineers Inc. v. Electric Engineering Company*, 158 F.3d at 1057, it is not always necessary for the court to impose less severe sanctions first, or to give any explicit warning of the dismissal sanction in order for the sanction of dismissal or default to be proper. Defendant, through his counsel, advised Plaintiffs on April 17-18, and on April 25, 2008 that rather than produce records for inspection as the Court ordered, he would no longer defend the action and would permit a judgment to be entered against him. In effect, Defendant was conceding the imposition of severe sanctions rather than comply with his discovery duties. Although Defendants' counsel were served with Plaintiffs' April 24, 2008 status report, Defendant did not file a response or appear at the May 1, 2008 hearing to dispute or clarify the representations made in Plaintiffs' status report. The Court's May 1, 2008 order (#70) cautioned Defendant that failure to comply with the order might result in the issuance of an order to show cause why sanctions should not be imposed, but did not explicitly warn Defendant that severe sanctions would be imposed. Under the circumstances of this case, however, it was not necessary to issue such an explicit warning to Defendant who had already advised Plaintiffs of his willingness to accept judgment against him rather than comply with the Court's discovery order.

Imposition of lesser sanctions would arguably be appropriate if Defendant had made some effort to comply with the discovery order or had even notified Plaintiffs of his willingness to comply once he reversed his position on abandoning his defense and allowing judgment to be taken against him. Defendant, however, did neither. This conduct meets the test for willfulness, bad faith or fault as set forth in *Henry v. Gill Industries,* 983 F.2d at 948, and subsequent Ninth Circuit decisions. Nor is imposition of less severe sanctions required or appropriate, here, when Defendant made no effort to comply with the discovery order despite his obvious knowledge that if he was going to defend this action, he needed to comply with the order.

The Court further finds that Defendant's failure to comply with the Court's order (#70), as well as its oral order on April 17, 2008, has prejudiced the ability of Plaintiffs' to obtain a fair trial on the merits because they have been prevented from obtaining the records necessary for a forensic examination by an accountant and to effectively examine or cross-examine Defendant at trial.

Defendant's noncompliance has also prevented the expeditious resolution of this litigation and interfered with the Court's management of its docket. Under the circumstances, the factors supporting imposition of the severe sanction outweighs the public interest in obtaining a disposition of the case on its merits.

## CONCLUSION

Based on the foregoing, the Court finds that imposition of the sanction of striking Defendant's answer and entering a default judgment against him is warranted. Accordingly,

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiffs' Motion to Strike Answer of Defendant Weisman for Failure to Obey the Court's May 1, 2008 Order Compelling Discovery (#97) be **granted**.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within ten (10) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 29th day of August, 2008.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge